IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

| | | |
|---|---|---|
| HOWARD MORRIS, III, | ) | |
| | ) | |
| Petitioner/Appellant, | ) | |
| | ) | |
| vs. | ) | Circuit No.: 09-6248 |
| | ) | |
| RANDY WORKMAN, WARDEN, | ) | |
| | ) | |
| Respondent/Appellee. | ) | |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

THE HONORABLE DAVID L. RUSSELL
DISTRICT JUDGE
D.C. No. CIV-09-81-R

PETITIONER'S APPLICATION FOR
A CERTIFICATE OF APPEALABILITY AND BRIEF

ORAL ARGUMENT IS NOT REQUESTED

BILL ZUHDI, OBA#10013
P.O. BOX 1077
OKLAHOMA CITY, OKLAHOMA  73101
(405) 232-1400
COUNSEL FOR PETITIONER/APPELLANT

## **TABLE OF CONTENTS**

**TABLE OF CONTENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2,3**

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4-6**

**PRIOR OR RELATED APPEALS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

**STATEMENT OF JURISDICTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

**REQUEST FOR CERTIFICATE OF APPEALABILITY** . . . . . . . . . . . . . . . . . . . . **8**

**STATEMENT OF ISSUES PRESENTED FOR REVIEW** . . . . . . . . . . . . . . . . . . . **9**

**STATEMENT OF THE CASE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**

      **I.**    **Nature of the Case, the Course of the Proceedings, and**
           **Determination of the Court Below** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**

      **II.**    **Statement of Facts.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**

**SUMMARY OF ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **18**

**ARGUMENT ONE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**
**THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING**
**MR. MORRIS'S MOTION FOR MISTRIAL VIOLATING HIS SIXTH, EIGHTH**
**AND FOURTEENTH AMENDMENT RIGHTS, WARRANTING REVERSAL**
**OF HIS CONVICTION AND SENTENCE**

**ARGUMENT TWO** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**
**MR. MORRIS WAS DENIED HIS RIGHT TO BE PRESENT AT ALL CRITICAL**
**STAGES OF THE TRIAL PROCEEDINGS**

**ARGUMENT THREE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **27**
**PROSECUTOR MISCONDUCT DENIED MR. MORRIS'S**
**RIGHT TO A FAIR TRIAL IN VIOLATION OF THE SIXTH,**
**EIGHTH AND FOURTEENTH AMENDMENTS OF THE**
**UNITED STATES CONSTITUTION**

**ARGUMENT FOUR** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **33**
**THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO**
**SUPPORT MR. MORRIS'S CONVICTION FOR FIRST DEGREE MURDER**
**AND WAS INSUFFICIENT TO SUSTAIN HIS CONVICTION AND**
**THEREFORE, HIS CONVICTION VIOLATED THE DUE PROCESS CLAUSE**
**OF THE 14TH AMENDMENT OF THE U.S. CONSTITUTION**

**ARGUMENT FIVE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **41**
**THE ACCUMULATION OF ALL THE TRIAL ERRORS**
**ENTITLED PETITIONER MORRIS TO HABEAS RELIEF**

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **42**

**STATEMENT REGARDING ORAL ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . **43**

**CERTIFICATE OF COMPLIANCE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **44**

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **44**

**CERTIFICATE OF DIGITAL SUBMISSIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **45**

## <u>TABLE OF AUTHORITIES</u>

### <u>CASE AUTHORITIES</u>

*Boltz v. Mullin*, 415 F.3d 1215, 1230 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . .  34

*Braley v. Shillinger*, 902 F.2d 20 (10th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Brinlee v. Crisp*, 608 F.2d 839, 844 (10th Cir.1979),

         cert. denied, 444 U.S. 1047 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Church v. Sullivan*, 942 F.2d 1501, 1518 (10th Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . 20

*Cummings v. Evans*, 161 F.3d 610, 618 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 32

*Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868,

         40 L.Ed.2d 431 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Douglas v. Workman,* 560 F.3d  1156 (10th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Fagan v. Washington*, 942 F.2d 1155 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Hoxsie v. Kerby,* 108 F.3d 1239, 1245 (10th Cir.1997), *cert. denied,* 522 U.S. 844,

         118 S.Ct. 126, 139 L.Ed.2d 77 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) . . . . . . . . . . . . . . 39

*Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) . .  33, in passim

*Kelly v. Roberts*, 998 F2d 802, 809 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Larson v. Tansy*, 911 F.2d 392, 394 (10th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Lincoln v. Sunn*, 807 F.2d 805, 815-816 (9th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Lucero v. Kierby*, 133 F.3d 1299, 1307 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . 21,22,41

*Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 41

*Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029 (2003) . . . . . . . . . . . . . . . . 40

*Patton v. Yount*, 467 U.S. 1025, 1036 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Remmer v. U.S.*, 347 U.S. 227, 229 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981) . . . . . . . . . . . . . . . . . . . . . 22

*Rushen v. Spain*, 464 U.S. 114, 117 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25,26

*Smallwood v. Gibson*, 191 F.3d 1257, 1257 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . 28

*Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) . . . . . . . . . . . . . 23

*Tapia v. Tansy*, 926 F.2d 1554, 1562 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . 40

*Torres v. Mullin*, 317 F.3d 1145, 1158 (10th cir. 2003

*Wainwright v. Witt,* 469 U.S. 412, 428 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*United States v. Cerrato-Reyes*, 176 F.3d 1253, 1260 (10th Cir. 1999) . . . . . . . . . . . . 21

*United States v. Gagnon*, 470 U.S. 522, 526, 105 S.CT. 1482, 1484,

       84 L.Ed.2d 486 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Garcia*, ___ F.3d ___ (10th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 40

*United States v. McConnel*, 464 F.3d 1152 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . 20

*United States v. McKneely*, 69 F.3d 1067, 1080 (10th Cir.1995) . . . . . . . . . . . . . . . . . 42

*United States v. Mitchell*, 568 F.3d 1147 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Oliver*, 278 F.3d 1035, 1043 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . 40

*United States v. Powell*, 226 F.3d 1181, 1188 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . 21

*United States v. Rivera,* 900 F.2d 1462, 1471 (10th Cir.1990) . . . . . . . . . . . . . . . . . . . 42

## <u>STATUTORY AUTHORITIES</u>

28 U.S.C. § 2254(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, in passim

28 U.S.C.A. Section 2254(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, in passim

28 U.S.C.A. Section 2254(d)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

28 U.S.C. § 2253(C)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

OKLA. STAT. tit, 21 O.S. 2001 § 701.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

## <u>CONSTITUTIONAL AUTHORITIES</u>

U.S. Const. amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, in passim

U.S. Const. amend. VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, in passim

U.S. Const. amend. VIII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, in passim

U.S. Const. amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, in passim

## <u>OTHER AUTHORITIES</u>

OUJI-CR(2d) 4-61 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

## PRIOR OR RELATED APPEALS

This is the first appeal to this Court emanating from Howard Morris's (hereinafter "Petitioner Morris") habeas corpus proceeding.  Mr. Morris filed a direct appeal of his conviction to the Oklahoma Court of Criminal Appeals, Case No.: F-2006-428 (Doc. 12; Exhibit 1) (not published).

## STATEMENT OF JURISDICTION

*Statutory Bases for Jurisdiction*

Mr. Morris invoked the jurisdiction of the United States District Court for the Western District of Oklahoma through the filing of a Petition for Writ of Habeas Corpus pursuant Title 28, United States Code, §2254 (Doc. 1).  On July 27, 2009, United States Magistrate Doyle W. Argo filed a Report and Recommendation which denied Petitioner's Petition for a Writ of Habeas Corpus (Doc. 15). On September 16, 2009, Mr. Morris objected to the Report and Recommendation of the Magistrate Judge (Doc. 21).  On October 8, 2009, the district court entered an Order Adopting Report and Recommendation denying Mr. Morris' Petition for Writ of Habeas Corpus (Doc. 22). Judgment was also entered on October 8, 2009, (Doc. 23). Mr. Morris filed a  Notice of Appeal on November 6, 2009 (Doc. 24). Jurisdiction of this Court is invoked pursuant Title 28, United States Code, §2253 and Rule 4(a), Fed.R. App. Proc.

*Request for Certificate of Appealability*

The Certificate of Appealability should be issued in the instant case because, as set forth herein, appellant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253©)(2). Within Mr. Morris' arguments contained herein, he has met the required burden of proof by demonstrating the issues raised are debatable among jurists, a court could resolve the issues differently, that the questions presented deserve further proceedings and "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S.473, 120 S.Ct. 1595, 1603-04 (2000).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

**ARGUMENT ONE**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING
MR. MORRIS'S MOTION FOR MISTRIAL VIOLATING HIS SIXTH, EIGHTH
AND FOURTEENTH AMENDMENT RIGHTS, WARRANTING REVERSAL
OF HIS CONVICTION AND SENTENCE**

**ARGUMENT TWO**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**

**MR. MORRIS WAS DENIED HIS RIGHT TO BE PRESENT AT ALL CRITICAL
STAGES OF THE TRIAL PROCEEDINGS**

**ARGUMENT THREE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **27**

**PROSECUTOR MISCONDUCT DENIED MR. MORRIS'S
RIGHT TO A FAIR TRIAL IN VIOLATION OF THE SIXTH,
EIGHTH AND FOURTEENTH AMENDMENTS OF THE
UNITED STATES CONSTITUTION**

**ARGUMENT FOUR** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **33**

**THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO
SUPPORT MR. MORRIS'S CONVICTION FOR FIRST DEGREE MURDER
AND WAS INSUFFICIENT TO SUSTAIN HIS CONVICTION AND
THEREFORE, HIS CONVICTION VIOLATED THE DUE PROCESS CLAUSE
OF THE 14TH AMENDMENT OF THE U.S. CONSTITUTION**

**ARGUMENT FIVE**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **41**

**THE ACCUMULATION OF ALL THE TRIAL ERRORS
ENTITLED PETITIONER MORRIS TO HABEAS RELIEF**

## STATEMENT OF THE CASE

**I.** **Nature of the Case, the Course of the Proceedings, and Determination of the Court Below.**

On the 10th day of September, 2004, an Information was filed in Case No.: CF-2004-1212 in the District Court of Oklahoma County, Oklahoma, which charged Mr. Morris and Timothy Kendell Johnson ("Johnson"), Jeremy Dion Nicholson ("Nicholson") and Mr. Morris with Count 1, Murder in the First Degree of the victim, Rodney Lamont Perry, in violation of OKLA. STAT. tit, 21 § 701.7.

Trial by jury occurred on the 3rd, 4th and 5th of April, 2006, and at the conclusion of the trial, the jury found Mr. Morris guilty of the crime of murder in the first degree and fixed his punishment at life without the possibility of parole (Vol. 3, Tr. 170). Mr. Morris was sentenced on the 17th day of April, 2006, in accordance with the jury's verdict and assessment of sentence (Vol. 3, Tr. 173).

A direct appeal to the Oklahoma Court of Criminal Appeals ("OCCA") was filed on November 17, 2006 (Doc. 12, Exhibit 1). The OCCA affirmed the judgment and sentence of the trial court on October 24, 2007, in an unpublished opinion (Doc. 12, Exhibit 3).

Petitioner Morris then filed, pursuant to 28 U.S.C. §2254, a Petition for a Writ of Habeas Corpus on January 20, 2009 (Doc. 1) and Memorandum in Support of Petition for Writ of Habeas Corpus on March 23, 2009 (Doc. 11). A Response to Petition for Writ of Habeas Corpus was filed by Respondent on April 13, 2009 (Doc. 12).

United States   Magistrate Judge Doyle W. Argo entered a Report and Recommendation on July 27, 2009, recommending Petitioner Morris' writ of habeas corpus be denied (Doc. 15). Petitioner Morris filed an Objection to Report and Recommendation on September 16, 2009 (Doc. 21). On October 8, 2009, the Honorable David L. Russell, U.S. District Judge, issued an Order and adopted Magistrate Judge Argo's Report and Recommendation and denied the petition for writ of habeas corpus (Doc. 22). On that same date, the district court also filed a judgment denying the petition for writ of habeas corpus in accordance with the order entered on the same date (Doc. 23). On November 6, 2009, Petitioner Morris filed a Notice of Appeal (Doc. 24).

## II.    Statement of Facts.

### State witnesses

Demetria Tinner ("Tinner") testified that on the evening of February 20th, 2004, at 10:30 or 11:00, she was heading over to Rockwell Villa Apartments. Christa Anderson was with her in Tinner's car, a white Ford Focus. They were going to the apartments to visit Anderson's friend Kesha (Vo. 2, Tr. 35, 36, 40). Both Tinner and Anderson had previously lived in the Rockwell Villa Apartments. When they had lived at the apartments Rodney Perry lived "across the way" from them the entire time (Vol. 2, Tr. 37).

When Tinner came off of Rockwell to Rockwell Villa she saw a group of guys standing outside and arguing in the parking area. Tinner testified she saw five guys. Four men were arguing with one man. Tinner's front tires were over a speed bump and she came to a stop. They let the car windows down and watched. The four men started stomping all

over the one man's body and were beating him up really bad, jumping on his chest and stuff (Vol. 2, Tr. 40, 41, 42). All four men were participating in the beating. The man that was beaten was standing up at first but one of the guys hit him and he fell back on the ground. They started jumping and stomping him (Vol. 2, Tr. 43). Tinner testified the four men were saying something about Crip stuff and Rodney saying he didn't do anything. Rodney then started gurgling real bad. Rodney was shaking real bad and Tinner could tell he was not breathing. Tinner called 911 on her way back. She had turned around in a little circle and came back by the men. As she came into the apartment complex the beating was on her side of the car and on the way back the beating was on the passenger side of the car. About ten people came out. One of the four men took off through the crowd. The other three men got into a car and left behind her on Rockwell (Vol. 2, Tr. 44, 45, 46, 47, 54). Tinner identified Mr. Morris as being out there that night (Vol. 2, Tr. 48, 49). Tinner did not identify Mr. Morris when she was initially interviewed by the police and did not tell them she knew him. Tinner told the prosecutor right before the last trial. Tinner stated she did not remember how Mr. Morris was dressed (Vol. 2, Tr. 49, 50). Tinner testified that Mr. Morris came to the car and guessed that when he noticed it wasn't Eerie in the car he went through the crowd (Vol. 2, Tr. 51). Tinner stated she knew Mr. Morris as NC (Vol. 2, Tr. 52). Tinner agreed that Mr. Morris was one of the four men that was beating and stomping Rodney Perry (Vol. 2, Tr. 54, 61).

On cross examination, Tinner admitted that in July 2004 at a preliminary hearing she testified that she answered no to the question of whether she recognized anybody at the scene (Vol. 2, Tr. 55, 56, 61, 62).

Christa Anderson ("Anderson") testified that on February 20, 2004, between 10:30 and 11, she and Tinner were driving to the Rockwell Villa Apartments. Anderson was in the passenger seat of Dinner's white Ford Focus. They were going to visit Anderson's friend Tasha. Anderson knew Rodney Perry. She had lived in the apartments from 2001 to 2002. As Anderson and Dinner were entering the apartments they went over a speed bump, and heard someone say "What did I do? I didn't do anything." That is when Anderson saw the fight start (Vol. 2, Tr. 65, 66, 67, 68). After the individual made the statements he started getting beaten up by four gentleman. The individual was being punched very violently (Vol. 2, Tr. 68, 69). Once the men were against the mailboxes the victim was lifeless and kind of slid down the car. The victim was laying on the ground where the men proceeded to stomp on him and kick. Rodney was the individual that was beat up. Anderson could hear what sounded like a wet snore, like a gurgling sound (Vol. 2, Tr. 70, 71).

Oklahoma police officer Taylor Shaw ("Shaw") testified that on February 20th, 2004, at 11:48 p.m., he received a call on an assault at an apartment location located at 933 North Rockwell. When officer Shaw arrived he found a gentleman that looked like he was sitting or leaning against a car. Officer Shaw got out of his car and asked the man if he was okay. Officer Shaw did not get a response. Officer Shaw checked for a pulse and didn't find one, and then told EMSA to step it up (Vol. 2, Tr. 75, 76, 77).

-13-

Oklahoma police officer Matthew Reed ("Reed") stated on February 20th, 2004 at approximately 11:49 p.m. he was dispatched to Rockwell Villa Apartments.  When officer Reed arrived he observed the deceased Mr. Perry laying against a Dodge Neon (Vol. 2, Tr. 78, 79).  Officer Reed could see blood on Mr. Perry's face (Vol. 2, Tr. 79, 80, 81).

Oklahoma police officer David Feskanich ("Feskanich") testified he was one of the crime scene investigators assigned to the homicide of Rodney Perry.  Officer Feskanich arrived on the scene at 12:35 on the 21st (Vol. 2, Tr. 83).  Officer Feskanich described his role, sketches of the scene, what he found at the scene and items he had collected (Vol. 2, Tr. 85-95).  Officer Feskanich testified that one of the detectives brought to his attention that a Mitsubishi Galant vehicle may have also been involved. Officer Feskanich also collected a wool or knit beanie cap (Vol. 2, Tr. 96, 97).  Officer Feskanich  testified about photographs taken of the deceased Mr. Perry which showed blood coming from the nose, mouth, and facial area as well as other photographs of the deceased's injuries (Vol. 2, Tr. 99, 100, 101).

Chai Choi ("Choi"), forensic pathologist working with the office of Chief Medical Examiner for the State of Oklahoma, performed an autopsy on Rodney Perry on February 21st, 2004 (Vol. 2, Tr. 103, 104, 105).  Dr. Choi described the injuries she found to Mr. Perry's body (Vol. 2, Tr. 105,  108, 109, 110, 111, 112, 113, 114).  Based on Dr. Choi's examination, her determination of the cause of death was head injury.  Dr Choi classified the death as a homicide, one person harm to another person that resulted in death (Vol. 2, Tr. 113).

Kyle Laws ("Laws"), a resident of Rockwell Villa Apartments, on February 20th, 2004, at approximately 11 or 11;30 P.M., saw a fight broke out between Rodney Perry and four other individual. Laws was upstairs in his apartment when the fight first broke out (Vol. 2, Tr. 117, 118, 127). Laws went downstairs with six or seven friends to where th fight was and the four men walked by him bragging that they had knocked some guy out and he was over there asleep. Laws testified one of the four men had two sets of teardrops tattoo under each eye. After initially testifying he could not remember any of the clothing these individuals were wearing, Laws testified that he vaguely remembered a North Carolina logo (Vol. 2, Tr. 119, 120, 121, 122, 128). Laws went over and looked at Rodney Perry. Mr. Perry looked like he was laid out on the ground asleep. His body was laying next to the vehicle on the concrete. Rodney Perry was trying to gasp for air. The guy with the teardrops came over and grabbed Rodney Perry by his shirt , picked him up and said something to him, slammed his head on the concrete pretty hard, then kicked him twice in the head. The guy then picked Rodney Perry back up by his shirt, leaned him against the car and then walked away to another group of people (Vol. 2, Tr. 122, 123). The cops pulled up and the guy with the teardrops followed Laws and the group of his family up to their apartment. The guy with the teardrops and those with him tried to use the phone but they were not allowed in. Kurt gave them a cell phone from the house to use (Vol. 2, Tr. 124, 125).

Kurt Brazille ("Brazille"), on February 20, 2004, between 10:30 and midnight, was at his girlfriend's house at Rockwell Villa Apartments (Vol. 2, Tr. 130). Either Brazille's niece or daughter came over and said there was a fight by the mailboxes. Brazille dropped

everything he had in his hand and took off running outside (Vol. 2, Tr. 134, 156). Brazille was met by his nephew Dewan Debose and three other guys. Brazille identified Mr. Morris as one of the three other guys. He stated Mr. Morris had on a baseball cap and a jacket with Tar Heel colors (Vol. 2, Tr. 137, 139). In past court testimony Brazille had testified the individual that he identified at trial as Mr. Morris had a jacket on that said "Thug Life." (Vol. 2, Tr. 155, 156). Brazille saw that one of the guys had teardrop tattoos under each eye. A third guy had a black hoodie (Vol. 2, Tr. 138, 140). Brazille testified that Mr. Morris kept biting his bottom lip and was saying he would get a fair fight with anyone that wanted one (Vol. 2, Tr. 140, 141, 142, 143). The three men went back around the side of the grey car where Rodney Perry was laying. Brazille stated he could hear stomping and skin slapping. They then came back over to where Brazille was standing outside the apartment building. That is when they got in their car. Brazille stated that Mr. Morris got in the passenger side but in the back seat (Vol. 2, Tr. 147, 148, 157).

There was Brazille's stepson and close to nine of his skateboard friends out there that night, and there could have been over 20 people (Vol. 2, Tr. 163). The Oklahoma City and Bethany police came to the apartments. About four minutes later Brazille saw Mr. Morris and the teardrop guy in Tracy's house. Brazille stated that Mr. Morris and the teardrop guy told him they wanted to use the phone. Brazille did not want them to use the house phone so he gave them his stepson's cell phone (Vol. 2, Tr. 149, 150, 161). Brazille testified he handed the phone to Howard and that Howard spoke on the phone. Brazille stated that

Howard told whoever he was talking to on the phone to meet him at Abadan's, a small convenience store on Northwest 10th.  Brazille stated that Howard told him thank you and then proceeded to go out the back way down the back stairway (Vol. 2, Tr. 150, 15, 161).

Brazille testified that before that night he had never seen Mr. Morris, the teardrop guy or the guy in the black hoodie.  Brazille knew Howard's name from having been in court and hearing lawyers say Howard Morris (Vol. 2, Tr. 152).  Brazille was in contact with the three men approximately 10 minutes or less (Vol. 2, Tr. 163).

**Defense witness**

Howard Morris ("Mr. Morris") took the stand in his own defense.  He had lived in an apartment at Southwest 74th and May since January 2004.  On September 2, 2004 Mr. Morris was arrested at his home when he got off work.  Mr. Morris denied being near the location of the homicide on February 20, 2004.  Mr. Morris denied being involved in the homicide that he was charged with and Mr. Morris denied having any information about the homicide (Vol. 3, Tr. 75, 76, 77, 78, 80).

On cross-examination, Mr. Morris denied ever meeting Dinner, denied knowing Debose, denied knowing or ever meeting Brazille, and denied knowing Rodney Perry.  Mr. Morris stated he did not know what happened to Mr. Perry and that he was not there at the homicide of Mr. Perry (Vol. 3, Tr. 82, 83).  Mr. Morris had one item of Tar Heel clothing, as well as other teams.  Mr. Morris testified he wasn't wearing Tar Heel clothing on February

20th, 2004, he was at home in bed (Vol. 3, Tr. 84). Mr. Morris testified he has never been convicted of a felony (Vol. 3, Tr. 90).

Other facts may be included as warranted in reference to Morris's arguments herein.

## SUMMARY OF ARGUMENT

Mr. Morris submits the trial court should have granted a motion for mistrial after the judge met privately with the jury to discuss security concerns voiced by jurors and after the trial court heard actual biased statements of the jurors, and in particular, Juror Myers. Petitioner Morris asserts the district court committed manifest error when it found the record of Juror Myers' examination, when considered in its entirety, did not support the trial court granting a motion for mistrial. The state court finding the trial court's denial of Mr. Morris's motion for mistrial was not clearly against the logic and effect of the facts presented should not be presumed correct. After considering the record as a whole, Petitioner Morris asserts this Court should conclude that such factual determination is not fairly supported by the record. Further, this Court should find the federal district court in the case herein made an erroneous finding that the record was amply supported to support the trial court's decision to deny the mistrial.

Regarding Argument Two, Mr. Morris asserts the trial court's private meeting with the jury (without him being present) to discuss their security concerns violated Mr. Morris's right to be present at all critical stages of the proceedings. Mr. Morris also asserts that, in light of the record as a whole, the interaction between the trial judge and the jury thwarted

his right to a just and fair proceeding and therefore, a certificate of appealability should be granted.

Mr. Morris also asserts he was denied due process of law when the prosecutor improperly shifted the burden of proof to him during closing argument, contrary to United States Supreme Court law.  Mr. Morris raised this issue to both the state and district court. The OCCA denied Petitioner Morris relief and petitioner asserts the OCCA's decision was contrary to Supreme Court law because the OCCA erroneously found that the prosecutor's comments were fair comments since the issue was raised by Mr. Morris when he testified. The district court then erred when it found the comments made by the prosecutor did not shift any burden of proof to Mr. Morris nor so infect the trial with unfairness as to render the resulting conviction a denial of due process.  The district court also erroneously found the comments did not so prejudice Mr. Morris's rights to a presumption of innocence or privilege against self-incrimination to amount to a denial of those rights.  Because Mr. Morris's rights were violated by prosecutorial misconduct, this certificate should issue.

As his fourth ground of error, Mr. Morris asserts the evidence at trial was insufficient to sustain his conviction.  By being convicted on insufficient evidence, Petitioner Morris was denied his constitutionally protected right to not be deprived of life, liberty, or property, without due process of law. Further, Petitioner Morris has made a substantial showing of the denial of a constitutional right, that is denial of his right to due process under the Fourteenth Amendment.  The OCCA erred in affirming his judgment and conviction and the United

States District Court erred in adopting the Magistrate Judge's Report and Recommendation and in denying Petitioner Morris' Petition for a Writ of Certiorari pursuant 28 U.S.C. §2254.

Finally, Petitioner Morris asserts cumulative error warrants reversal of his conviction and asserts within this brief, he has demonstrated actual, prejudicial errors, and the errors resulted in cumulative errors and the OCCA's determination of this issue was not reasonable.

## ARGUMENT ONE

### THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING MR. MORRIS'S MOTION FOR MISTRIAL VIOLATING HIS SIXTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS, WARRANTING REVERSAL OF HIS CONVICTION AND SENTENCE

### A. STANDARD OF REVIEW

This Court's standard of review of the denial of a motion for new trial is abuse of discretion. *United States v. McConnel*, 464 F.3d 1152 (10th Cir. 2006). The right to a jury trial implicitly guarantees to all defendants a fair trial with impartial jurors. *Brinlee v. Crisp*, 608 F.2d 839, 844 (10th Cir.1979), cert. denied, 444 U.S. 1047 (1980). When state courts make a factual finding regarding the impartiality of individual jurors, a presumption of correctness attaches to that determination and this court erroneously only whether the trial court committed "manifest error." *Patton v. Yount*, 467 U.S. 1025, 1036 (1984); accord *Church v. Sullivan*, 942 F.2d 1501, 1518 (10th Cir.1991).

### B. ARGUMENT

The district court committed manifest error in finding the record of Juror Myers' examination, when considered in its entirety, does not support Petitioner's claim. The trial

court should have granted a motion for mistrial after the judge met privately with the jury to discuss security concerns voiced by jurors and after the trial court heard the statements of the jurors, and in particular, Juror Myers [Doc. 15 at pg. 13]. Petitioner asserts the record amply supports these claims and he has adequately shown herein the trial court committed manifest error in finding the jury as a whole was impartial. *Lucero v. Kierby*, 133 F.3d 1299, 1307 (10th Cir. 1998). The Sixth Amendment right to a jury trial guarantees a defendant a fair trial by a panel of impartial jurors. *Brinlee*, *supra*. "Even if only one juror is unduly biased or prejudiced, the defendant is denied this constitutional guarantee...It is well-settled that a single partial juror deprives a defendant of his Sixth Amendment right to a trial by an impartial jury". *United States v. Mitchell*, 568 F.3d 1147 (9th Cir. 2009).

In the case at bar, Juror Myers' actual bias against Mr. Morris was obvious. Thus, Petitioner has clearly and convincingly rebutted the presumption of correctness of the trial court's findings and the district court erred in denying Mr. Morris a writ of habeas corpus on this issue. Based upon Juror Myer's voir dire answers and his state of mind which was prejudicial to Mr. Morris's interest, Mr. Morris asserts actual bias is shown. This Court has held actual bias may be established in either of two ways: "Actual bias can be shown by the express admission of the juror . . . of a state of mind prejudicial to a party's interest." *United States v. Cerrato-Reyes,* 176 F.3d 1253, 1260 (10th Cir. 1999) (internal quotation and citation omitted). And, actual bias may also be "found by the court based upon the juror's voir dire answers." *Id.; see also United States v. Powell*, 226 F.3d 1181, 1188 (10th Cir. 2000).

The Supreme Court has instructed a finding of actual bias "is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province." *Wainwright v. Witt,* 469 U.S. 412, 428 (1985). And, the "trial judge's function at this point in the trial is not unlike that of the jurors later on in the trial. Both must reach conclusions as to impartiality and credibility by relying on their own evaluations of demeanor evidence and of responses to questions." *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981) (plurality opinion by White, J.). Mr. Morris understands the law is that "an appellate court" cannot "easily second-guess the conclusions of the decision-maker who heard and observed the witnesses." *Id.* However, he asserts the plain reading of the statements by Juror Myers evidences actual bias, undue prejudice to him and the reversible errors by the state court and district court when each court denied Mr. Morris's claims on this issue .

Further, actual prejudice was shown by Mr. Morris and he has also demonstrated there was such a high probability of prejudice the trial must be deemed to be inherently lacking in due process. *Lucero* 133 F.3d at 1308. The juror repeatedly voiced concern over Mr. Morris and his belief that Mr. Morris needed to be convicted. (Vol. 3, Tr. 52-56). The answers by the juror reflect a juror who answered perceivably candidly in one sense but in the other was obviously harboring apparent bias. The candidness exhibited by the juror reflects a high probability or prejudice the trial was lacking in due process because the juror was clearly not impartial – even though he claimed he was. By his own admission, the juror was concerned that if "...we don't convict this guy, we're going to turn him loose and he's got my address.

Or if we do convict him, he's going to give it to his buddy and the buddy is going to come and get me...but I'm worried if we don't convict the guy, we're going to turn him loose in the community." (Vol. 3, Tr. 55). The juror's fear that Morris would be "turned loose on the community" clearly shows the juror had a very real and preconceived notion Mr. Morris was guilty of the charged offense. And the juror thought Mr. Morris was dangerous. Though the juror told the court he could be impartial, his responses belie this assertion. Juror Myers had already affirmatively voiced his concern Morris should not be turned loose on the community. Perhaps Juror Myers decided to stay on the jury just for that purpose – to insure Mr. Morris would not be "turned loose." Perhaps Juror Myers thought it his mission to ensure Mr. Morris would not be let go. Notwithstanding, the juror's unequivocal message to all who heard his statements was that Mr. Morris needed to be incarcerated. He was dangerous and should not be turned loose on society and the jury needed to "convict the guy." (Vol. 3, Tr. 55).

Mr. Morris understands a juror cannot be shielded from every contact or influence which can affect their vote,[1] but a defendant is entitled to an impartial jury and Juror Myers's comments indicate he was not impartial and he already knew in his mind Morris was guilty before the trial began. This type of juror should not have been on his jury and because he was, a violation of Mr. Morris's due process rights occurred.

---

[1] *Smith v. Phillips*, 455 U.S. 209, 217 (1982).

The evidence was clear Juror Myers did not remain true to his oath and he failed to conscientiously observe the instructions and admonitions of the court.  As set forth above, Mr. Morris clearly and convincingly has rebutted the presumption of correctness of the trial court's findings related to the juror's bias.  A review of the facts and statements of the juror evidences the juror was clearly not impartial and was actually biased and the state court and district court's findings to the contrary were erroneous.  "State court findings relating to juror bias "are factual determinations to which the presumption of correctness under 28 U.S.C.A. Section 2254(d) apply, although the constitutional standard of jury impartiality is a question of law." *Patton,* 467 U.S. at 1037 n. 12, 104 S.Ct. at 2891 n. 12; *Lincoln v. Sunn*, 807 F.2d 805, 815-816 (9th Cir.1987).  The state prisoner in *Lincoln* asserted he was denied a fair trial because of excessive pretrial publicity. The court, while noting a "preconceived notion as to the defendant's guilt or innocence, without more, does not rebut a juror's presumed impartiality, as long as the juror can lay aside his or her impression and render a verdict on the evidence," observed "a juror's assertion of impartiality is not dispositive, if the defendant can demonstrate 'the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.' " 807 F.2d at 815.

The state court finding that the trial court's denial of Mr. Morris's motion for mistrial was not clearly against the logic and effect of the facts presented and should not be presumed to be correct.  This court, after considering the record as a whole, should conclude that such factual determination is not fairly supported by the record.  28 U.S.C.A. Section 2254(d)(8).

*Braley v. Shillinger*, 902 F.2d 20 (10th Cir.1990), *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).  Further, the federal district court in the case herein made an erroneous finding that the record was amply supported to support the trial court's decision to deny the mistrial (Doc. 22 at pg. 13).

Contrary to the U.S. Magistrates Judge's and the district judge's findings that the decision by the trial court to deny the mistrial were amply supported by the record,  Petitioner asserts the presumption of correctness of the court's findings[2] were rebutted by the actual verbiage provided by the juror.  The district court's findings were incorrect and in error that the OCCA's decision was not contrary to or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court and that the decision was not based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. (Doc. 15 at pg. 18).    Accordingly, this court should grant a certificate of appealability on this issue.

**ARGUMENT TWO**

**MR. MORRIS WAS DENIED HIS RIGHT TO BE PRESENT AT ALL CRITICAL STAGES OF THE TRIAL PROCEEDINGS**

**A.  STANDARD OF REVIEW**

It is a federal right to be present at all critical stages of a defendant's trial. This right arises out of the Confrontation Clause of the Sixth Amendment and is protected by the Due Process Clause. See *United States v. Gagnon*, 470 U.S. 522, 526 (1985); *Rushen v. Spain*,

---

[2]Doc. 15 at pg. 18.

464 U.S. 114, 117 (1983). The question whether a defendant has a right to be present is a question of law which this Court reviews *de novo. Larson v. Tansy*, 911 F.2d 392, 394 (10th Cir.1990).

## B. ARGUMENT

The trial court's private meeting with the jury to discuss their security concerns violated Mr. Morris's right to be present at all critical stages of the proceedings. Mr. Morris asserts that, in light of the record as a whole, the interaction between the trial judge and the jury thwarted his right to a just and fair proceeding, contrary to the state and federal district court's findings and therefore, the granting of a certificate of appealability is appropriate.

Any private communication with a juror during trial about the matter pending before the jury is deemed presumptively prejudicial. *Remmer v. U.S.*, 347 U.S. 227, 229 (1954). Additionally, the Sixth Amendment guarantees the right of a criminal defendant to be present at trial to confront witnesses and the evidence against him. *Gagnon*, supra [Doc. 15 at pgs. 19, 20]. Mr. Morris is aware that "The defense has no constitutional right to be present at every interaction between a judge and a juror..." *Id*; but when the judge met with the jury unknown to him or his counsel and discussed with the jury their concerns about Mr. Morris, his right to due process under the Fifth Amendment was also violated since his absence impaired his ability to defend himself. *See Gagnon, supra.* Juror Myer's statements that Mr. Morris needed to be convicted because the jury needed to "convict the guy" or he was going to be "turn[ed] loose in the community (Vol 3, Tr. 54) went to the core of the merits of the

case.  In Juror Myer's mind, Mr. Morris needed to be found guilty or he was going to harm others because he was dangerous – and guilty.  Mr. Morris obviously needed to defend himself against these voiced beliefs.

The decision of the Oklahoma Court of Criminal Appeals was contrary to or an unreasonable application of clearly established Federal law as determined by the Supreme Court and was also based on an unreasonable determination of the facts in light of the record. Mr. Morris should have been present during the communications and meeting between the jurors and the judge.  The juror's statements went to the essence of the merits of the case and was thus a critical stage of the trial proceedings and a constitutional violation occurred. Therefore, the state and district court's findings were incorrect and a certificate of appealability should be granted on this issue.

### ARGUMENT THREE

### PROSECUTOR MISCONDUCT DENIED MR. MORRIS'S RIGHT TO A FAIR TRIAL IN VIOLATION OF THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION

### A. STANDARD OF REVIEW

Habeas relief is appropriate when a prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). If an improper

comment implicates "specific guarantees of the Bill of Rights," federal courts "ha[ve] taken special care to assure that prosecutorial conduct in no way impermissibly infringes them." *Id.* "Prosecutorial misconduct does not warrant federal habeas relief unless the conduct complained of is so egregious as to render the entire proceedings against the defendant fundamentally unfair." *Smallwood v. Gibson*, 191 F.3d 1257, 1257 (10th Cir. 1999). Regarding plain error review of comments not objected to, this court reviews each assertion of prosecutorial misconduct independently under federal law and affords 2254(d) deference to the OCCA's conclusion. *Douglas v. Workman,* 560 F.3d 1156 (10th Cir. 2009).

## B. ARGUMENT

Mr. Morris was denied due process of law when the prosecutor improperly shifted the burden of proof to him during closing argument, contrary to United States Supreme Court law. Mr. Morris raised this issue to both the state and district court. The OCCA denied Petitioner Morris relief and petitioner asserts the OCCA's decision was contrary to Supreme Court law because the OCCA erroneously found the prosecutor's comments were fair comments since the issue was raised by Mr. Morris when he testified. After Mr. Morris presented this issue to the federal court in his writ of habeas corpus, the district court erred when it found the comments made by the prosecutor did not shift any burden of proof to Mr. Morris nor so infect the trial with unfairness as to render the resulting conviction a denial of due process. The district court also erroneously found the comments did not so prejudice Mr.

Morris's rights to a presumption of innocence or privilege against self-incrimination to amount to a denial of those rights.

The state and federal courts erred in denying Mr. Morris relief on this issue and accordingly, a certificate of appealability is appropriate. At trial, the prosecutor repeatedly wrongly shifted the burden of proof to Mr. Morris in closing arguments. The prosecutor's remarks, set forth below, were so fundamentally unfair that Mr. Morris was denied due process.

> (By the prosecutor): This Defendant couldn't even give you a reason that these people would all get together and do this. *You've heard no evidence that would indicate to you these people are not telling you what they saw.*
>
> (Vol. 3, Tr. 108, lines 8-11)
>
> (By the prosecutor): There is no evidence presented in this case whatsoever that Demetria Dinner took the stand to do anything but to tell you the truth.
>
> Vol. 3, Tr. 146, lines 5-7).

These two comments by the prosecutor were not objected to by trial counsel. However, Mr. Morris submits they were so egregious in nature that plain error occurred and reversal is warranted despite trial counsel's failure to object.  As set forth above, the prosecutor told the jury "There is no evidence presented in this case whatsoever that Demetria Dinner took the stand to do anything but to tell you the truth."  Vol. 3, Tr. 146, lines 5-7), but a review of Tinner's testimony reveals this was not the case. Dinner admitted

on cross-examination that in the preliminary hearing, she had testified she answered "no" to the question of whether she recognized anybody at the scene (Vol. 2, Tr. 55, 56, 61, 62). However, at trial, when the prosecutor told the jury Dinner had been truthful, Mr. Morris was then placed in the position to prove his innocence by presenting evidence to prove that Dinner hadn't been truthful.

Another instance of prosecutor misconduct occurred when he once again impermissibly shifted the burden of proof to Mr. Morris. This comment was objected to by trial counsel:

> (By the prosecutor): ...the Defense never shows any reason to question eyewitness credibility. Mr. Box never establishes a conspiracy among those individuals to lie. *He has the right to present evidence of that and he didn't.* What can they gain by doing so? And, secondly, wouldn't you expect a more complete thorough and unquestionable story if they did indeed conspire to lie.
>
> Trial counsel: Objection, Your Honor. May I approach?
>
> The Court: You may.
>
> Trial counsel: Your Honor, I take issue with this part of the closing argument. The Defendant has no obligation to recall any testimony. The burden is strictly on the State of Oklahoma and any comment that the Defense is lacking in putting on particular evidence I believe is improper.
>
> (Vol. 3, Tr. 156, lines 24, 25 and Tr. 157, lines 1-13)

The judge then told trial counsel, "I don't believe that what he said shifts the burden. He just said that you never established that." (Vol. 3, Tr. 157).

The OCCA wrongly found no merit in the prosecutorial misconduct assertions. In doing so, the state court failed to consider that when Mr. Morris testified at trial he denied beating the victim, denied knowing witnesses Brazille, Dinner, and Debose, and that their testimony was a result of mistaken identity (Doc. 12, Exhibit 3 at pg. 13).

Mr. Morris submits the state and district court's denial of this prosecutorial misconduct claim was contrary to U.S. Supreme Court law and contrary to his due process rights under the United States Constitution. The burden was not on him to prove each element of murder in the first degree beyond a reasonable doubt. Mr. Morris's testimony of mistaken identity was not a permissible reason under the law for the prosecutor to shift the burden of proof to him. The prosecutor's comments without a doubt wrongly shifted the burden of proof to him and caused Mr. Morris's trial to be so fundamentally unfair he was denied his due process rights. *Donnelly*, *supra*.

Additionally, the state court's finding was based upon an erroneous statement of the facts of the case. In its opinion, the OCCA stated that Kurt Brazille had testified he saw Mr. Morris beating the victim Rodney Perry (Doc. 12, Exhibit 3 at pg. 13). However, Kurt Brazille had not so testified. At trial, Kurt Brazille testified the three men went back around the side of the gray car where Rodney Perry was laying and he only heard stomping and skin slapping (Vol. 2, Tr. 147, 148). He did not say he saw the beating.

The prosecutor's comments shifted the burden to Mr. Morris and he was forced to prove the witnesses were not being truthful. Mr. Morris's defense was that the witness testimony was a result of mistaken identity, not that the witnesses were lying. The prosecutor, through his comments, placed the burden of proving that the witnesses were lying upon Mr. Morris, which was not related or relevant to his mistaken identity defense.

Habeas relief is available for prosecutorial misconduct when the misconduct is so egregious that it renders the entire trial fundamentally unfair. *Donnelly*; *supra; see also Cummings v. Evans*, 161 F.3d 610, 618 (10th Cir. 1998). Further, when the prosecutorial misconduct directly affects a specific constitutional right such as privilege against self-incrimination or the presumption of innocence, a habeas petitioner doesn't need to establish the entire trial was rendered unfair. Instead, the habeas petitioner need only prove the constitutional guarantee was so prejudiced that it effectively amounted to a denial of that right. *Torres v. Mullin*, 317 F.3d 1145, 1158 (10th cir. 2003.

As set forth above, Morris was denied due process when the prosecutor made improper remarks which shifted the burden of proof to him during closing argument, in violation of his due process rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Such conduct was so egregious that reversible error is warranted. The evidence of guilt was not overwhelming in his case (*See Argument Four)* and Mr. Morris submits the prosecutor's comments were likely to have affected the verdict and sentence.

The state and federal district court erred in finding the prosecutor comments did not merit reversal and therefore, this certificate of appealability should be granted.

## ARGUMENT FOUR

### PETITIONER MORRIS'S RIGHTS TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WERE VIOLATED WHEN HE WAS WRONGLY CONVICTED ON INSUFFICIENT EVIDENCE

### A.  STANDARD OF REVIEW

This Court grants a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  It is incumbent upon the reviewing court to independently review the record evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

### B.  ARGUMENT

Petitioner Morris was denied his constitutionally protected right to not be deprived of life, liberty, or property, without due process of law. U.S. Const. amends. V and IVX.  As set forth herein, Petitioner Morris has made a substantial showing of the denial of a constitutional right, that is denial of his right to due process under the Fourteenth Amendment and has sustained his burden of establishing that his due process rights were violated because he was wrongly convicted.  The OCCA erred in affirming his judgment and conviction and the United States District Court erred in adopting the Magistrate Judge's

Report and Recommendation and in denying Petitioner Morris' Petition for a Writ of Certiorari pursuant 28 U.S.C. §2254.

Petitioner Morris was denied his constitutional right to due process by being deprived of his liberty via a conviction based on insufficient evidence. The evidence required to meet the elements to support the conviction could not have been found by a reasonable jury. The decisions of the state and federal district court was an unreasonable application of *Jackson* and therefore, was contrary to Supreme Court law.

Holdings by the OCCA are reviewed either under 28 U.S.C. § 2254(d)(1) or are reviewed to determine whether the OCCA made an unreasonable determination in light of the evidence presented in the state court proceeding or whether the OCCA's holding was an unreasonable application of clearly established law. *Boltz v. Mullin*, 415 F.3d 1215, 1230 (10 Cir. 2005) (noting that the Tenth Circuit has not decided whether a sufficiency of the evidence claim presents a mixed question of law reviewed under § 2254(d)(1) or a question of fact reviewed under § 2254(d)(2)).

Under Oklahoma law and in light of this standard, Petitioner submits a reasonable fact-finder could not conclude he was guilty of murder in the first degree in violation of OKLA. STAT. tit, 21 O.S. 2001 § 701.7. The elements for murder in the first degree are:

*First*:        the death of a human;

*Second:*        the death was unlawful;

*Third:*        the death was caused by the defendant;

*Fourth:*        the death was caused with malice aforethought.

Instruction No. 4-61; OUJI-CR(2d); 21 O.S. 2001, § 701.7.

Mr. Morris asserts the state failed to prove the third element of the offense, that is, the death of the victim was caused by him. The evidence at trial to connect Mr. Morris to the murder of Mr. Perry consisted of eye witness testimony of Dinner, Debose (by way of transcript testimony), Brazille, and vaguely, Laws.

Dinner identified Mr. Morris as being out there the night Rodney Perry was beaten and killed (Vol. 2, Tr. 43, 44, 45, 46, 47, 48, 49). However, Dinner did not identify Mr. Morris when she was initially interviewed by the police and did not tell them she knew him. Dinner told the prosecutor right before the last trial. Dinner stated she did not remember how Mr. Morris was dressed (Vol. 2, Tr. 49, 50). Dinner testified that Mr. Morris came to the car and guessed that when he noticed it wasn't Eerie in the car he went through the crowd (Vol. 2, Tr. 51). Dinner stated she knew Mr. Morris as NC (Vol. 2, Tr. 52). Dinner agreed that Mr. Morris was one of the four men that was beating and stomping Rodney Perry (Vol. 2, Tr. 54, 61).

On cross examination, Dinner admitted that in July 2004 at a preliminary hearing she testified that she answered no to the question of whether she recognized anybody at the scene (Vol. 2, Tr. 55, 56, 61, 62).

Laws testified, after initially testifying he could not remember any of the clothing these individuals were wearing, he testified that he vaguely remembered a North Carolina logo (Vol. 2, Tr. 119, 120, 121, 122, 128).

Braille testified that he was met by his nephew Dewan Debose and three other guys when he was running to the mailboxes where he was told there was a fight. Brazille identified Mr. Morris as one of the three other guys. He stated Mr. Morris had on a baseball cap and a jacket with Tar Heel colors (Vol. 2, Tr. 134,137, 139). In past court testimony Brazille had testified the individual that he identified at trial as Mr. Morris had a jacket on that said "Thug Life." (Vol. 2, Tr. 155, 156). Brazille saw that one of the guys had teardrop tattoos under each eye. A third guy had a black hoodie (Vol. 2, Tr. 138, 140). Brazille testified that Mr. Morris kept biting his bottom lip and was saying he would get a fair fight with anyone that wanted one (Vol. 2, Tr. 140, 141, 142, 143). The three men went back around the side of the grey car where Rodney Perry was laying. Brazille stated he could hear stomping and skin slapping. They then came back over to where Brazille was standing outside the apartment building. That is when they got in their car. Brazille stated that Mr. Morris got in the passenger side but in the back seat (Vol. 2, Tr. 147, 148, 157).

The Oklahoma City and Bethany police came to the apartments. About four minutes later Brazille saw Mr. Morris and the teardrop guy in Tracy's house. Brazille stated that Mr. Morris and the teardrop guy told him they wanted to use the phone. Brazille did not want them to use the house phone so he gave them his stepson's cell phone (Vol. 2, Tr. 149, 150, 161). Brazille testified he handed the phone to Howard and that Howard spoke on the phone. Brazille stated that Howard told whoever he was talking to on the phone to meet him at Abadan's, a small convenience store on Northwest 10th. Brazille stated that Howard told him

thank you and then proceeded to go out the back way down the back stairway (Vol. 2, Tr. 150, 15, 161).

Brazille testified that before that night he had never seen Mr. Morris, the teardrop guy or the guy in the black hoodie. Brazille knew Howard's name from having been in court and hearing lawyers say Howard Morris (Vol. 2, Tr. 152). Brazille was in contact with the three men approximately 10 minutes or less (Vol. 2, Tr. 163).

A stipulation was entered into and read to the jury which stated that no latent prints lifted from any items of evidence processed by the Oklahoma City Police Department Technical Investigation Unit matched the Defendant Howard Purifor Morris, III (Vol. 2, Tr. 103).

There was no physical or forensic evidence to connect Mr. Morris with Rodney Perry's death. The eyewitness testimony was contradictory, not worthy of belief and insufficient. Eyewitness identifications are to be scrutinized with extreme care. OUJI-CR 9-19. Dinner identified Mr. Morris as being at the scene of the beating but she admitted that in July 2004 at a preliminary hearing she had testified that she answered "no" to the question of whether she recognized anybody at the scene (Vol. 2, Tr. 55, 56, 61, 62). Two years later at trial in April 2006, Dinner identified Mr. Morris. Clearly Tinner's prior description verses her identification at trial establishes her testimony as contradictory and unworthy of belief. Witness Laws "vaguely"remembered a North Carolina logo (Vol. 2, Tr. 122). Vague remembrance cannot meet the beyond a reasonable doubt standard. Brazille testified that before that night he had never seen Mr. Morris, the teardrop guy or the guy in the black

hoodie.  Brazille knew Howard's name from having been in court and hearing lawyers say Howard Morris (Vol. 2, Tr. 152).  Brazille was in contact with the three men approximately 10 minutes or less (Vol. 2, Tr. 163).  In past court testimony, Brazille had testified the individual that he identified at trial as Mr. Morris had a jacket on that said "Thug Life." (Vol. 2, Tr. 155, 156).  At trial, Brazille testified Mr. Morris had on a baseball cap and a jacket with Tar Heel colors (Vol. 2, Tr. 134,137, 139). Brazille claimed his nephew Debose told him they messed Rodney up (Vol. 2, Tr. 144).  Dewan, Debose, however, denied that he had a conversation with his uncle Brazille (Court's Exhibit No. 1, Tr. 49; P.H. Tr. 49; Vol. 2, Tr. 117). Brazille's testimony was contradictory and unworthy of belief.  Dewan Debose's testimony was introduced by way of preliminary hearing transcript.  Debose, not subject to cross-examination at trial, testified at preliminary hearing that the beating of Rodney Perry took "maybe even longer" than two and a half hours (P.H. Tr. 61).  Obviously the incident according to all the other witnesses took mere minutes, certainly not hours.  Debose's testimony is contradictory and unworthy of belief.  The evidence was clearly insufficient to sustain the conviction of Mr. Morris.

Petitioner submits the jury's factual findings should be disturbed because the jury's verdict was not within the bounds of reason and no rational trier of fact could find him guilty beyond a reasonable doubt. Petitioner Morris submits the U.S. Magistrate Judge and the United States District Court, in its *de novo* review, did not properly apply the elements to the evidence that was presented.  If the evidence had been properly applied to the elements of murder in the first degree, and in particular the third element, reasonable jurists could debate

the petition should have been resolved in a different manner or would find the district court's assessment of the constitutional claims debatable or wrong.

Therefore, the decision by the OCCA was an unreasonable application of *Jackson* and the decision by the OCCA was contrary to Supreme Court law as set forth in *Jackson* on the issue of sufficiency of the evidence and "...whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, *supra*. In addition to the state court decision being erroneous under the facts and law, Petitioner Morris submits the US Magistrate Judge erred in finding the OCCA's decision was not contrary to or an unreasonable application of the governing *Jackson* standard and in finding the OCCA's decision was not based on an unreasonable determination of the facts in light of the evidence presented.

The Due Process Clause of the Fourteenth Amendment and the corresponding provisions of the Oklahoma Constitution require that a criminal defendant only be convicted "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Jackson*, *supra*. citing *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

Because the State presented insufficient evidence, Petitioner Morris's conviction violates his right to due process under the Fourteenth Amendment. Since the evidence is insufficient for conviction, retrial would constitute double jeopardy. *Fagan v. Washington*, 942 F.2d 1155 (7th Cir. 1991); *Kelly v. Roberts*, 998 F2d 802, 809 (10th Cir. 1993).

Petitioner Morris asserts he has made a substantial showing of the denial of a constitutional right and a Certificate of Appealability should be issued. 28 U.S.C. § 2253©)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029 (2003).   To make such a showing, Petitioner Morris must demonstrate that reasonable jurists would find the district court's resolution of the constitutional issue contained in his motion debatable or wrong.  *Id.;* *Slack*, *supra*.  Petitioner Morris has made that showing and therefore merits a certificate of appealability.   Further, as set forth herein, habeas relief is warranted because Petitioner Morris has shown how the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented..." *Id* § 2254.  Petitioner Morris's due process rights were violated when, after viewing the evidence in the light most favorable to the State, rational triers of fact could not have found the essential elements of the crime beyond a reasonable doubt.  *Jackson*, *supra*,  *Scrivner*, *supra.*

This Court will

"...overturn a jury's credibility determination and disregard a witness's testimony only if the testimony is inherently incredible— that is, only if the events recounted by the witness were impossible "under the laws of nature" or the witness "physically could not have possibly observed" the events at issue. *United States v. Oliver*, 278 F.3d 1035, 1043 (10th Cir. 2001) (quoting *Tapia v. Tansy*, 926 F.2d 1554, 1562 (10th Cir. 1991))." *United States v. Garcia*, ___ F.3d ___ (10th Cir. 2010).

Mr. Morris asserts a review of the witnesses' testimony as set forth above fits in the criteria of physically being unable to possibly have observed the events at issue and therefore meets the criteria of being inherently incredible thus warranting this court overturning the jury's credibility determination.

Petitioner Morris has made a substantial showing herein of the denial of a constitutional right. 28 U.S.C. § 2253(C)(2). The OCCA decision that the evidence was sufficient was also an unreasonable application of clearly established federal law. *Boltz v. Mullin*, 415 F.3d 1215, 1230 (10th Cir. 2005) (noting that the Tenth Circuit has not decided whether a sufficiency of the evidence claim presents a question of law reviewed under § 2254(d)(1) or a question of fact reviewable under § 2254(d)(2)). The OCCA unreasonably applied the standard set forth by the United States Supreme Court in *Jackson*. See 28 U.S.C. § 2254(d)(1). And, the OCCA's decision was an unreasonable determination of the facts. The OCCA's determination regarding the sufficiency of the evidence was contrary to and an unreasonable application of *Jackson* and was an unreasonable determination of the facts as presented at trial. *Lucero*, supra; *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996). The Magistrate Judge's recommendation was in error and the district court erred in concurring with the recommendation.

## **ARGUMENT FIVE**

### **THE ACCUMULATION OF ALL THE TRIAL ERRORS ENTITLED PETITIONER MORRIS TO HABEAS RELIEF**

#### **A. STANDARD OF REVIEW**

"Cumulative-error analysis applies where there are two or more actual errors." *Moore*, *supra*.

#### **B. ARGUMENT**

The district court erred in denying the petition for writ of habeas corpus. In the Tenth Circuit, the general rule is that, "Cumulative error analysis applies where there are two or

more actual errors;  it does not apply to the cumulative effect of non-errors.  *Hoxsie v. Kerby,*
108 F.3d 1239, 1245 (10th Cir.1997), *cert. denied,* 522 U.S. 844, 118 S.Ct. 126, 139 L.Ed.2d
77 (1997); *Moore*, *supra.*  This Court should determine if the combined errors were harmless
by determining whether Petitioner Morris' substantial rights were affected.  *United States v.*
*McKneely*, 69 F.3d 1067, 1080 (10th Cir.1995).  However, in *United States v. Rivera,* 900
F.2d 1462, 1471 (10th Cir.1990) (en banc), the Tenth Circuit noted that "[t]he only possible
exception (to the above rule), is the holistic analysis conducted to determine whether the
entire trial was so fundamentally unfair that defendant's due process rights were violated."
Id. at 1471 n. 8.

Demonstrated herein Petitioner Morris has shown actual prejudicial errors and
therefore, there was cumulative error and the OCCA's determination of this issue was not
reasonable.  The district court erred in denying habeas relief on this issue.  The cumulative
prejudice from the errors raised herein and in Petitioner Morris' appeal to OCCA and his
habeas petition, entitled Petitioner Morris to habeas relief.

## CONCLUSION

Petitioner Morris asserts he has made a substantial showing of a denial of a
constitutional right and a Certificate of Appealability should be issued.  *Slack*, 529 U.S. at
481.  Petitioner Morris has also shown how the state court's errors set forth in Petitioner
Morris' propositions herein were unreasonable and were "contrary to, or involved an
unreasonable application of clearly established Federal law," 28 U.S.C. § 2254(d)(1),
therefore habeas relief is warranted.

The district court erred in finding that Petitioner Morris was not entitled to federal habeas corpus relief.  Petitioner Morris has demonstrated that reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  The district court erred in concurring and adopting the Magistrate Judge's Report and Recommendation that Petitioner Morris is not entitled to habeas relief and the district court erred in denying the petition.  A certificate of appealability should issue since Petitioner Morris has made a substantial showing of the denial of a constitutional right.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested.

Respectfully submitted this the 22nd day of March, 2010.

s/Bill Zuhdi
Bill Zuhdi, OBA #10013
Bill Zuhdi Attorney at Law, P.C.
P.O. Box 1077
Oklahoma City, OK  73101
(405) 232-1400 (office)
(405) 755-9686 (facsimile)
zlawoffice@aol.com
ATTORNEY FOR PETITIONER
HOWARD P. MORRIS, III

## CERTIFICATE OF COMPLIANCE

As required by FED. R. APP. P. 32(a)(7)©), I certify that this brief is proportionally spaced, is 13 point, and contains 10,850 including the table of contents, table of citations, statement with respect to oral argument, and certificates of counsel. *See* Fed. R. App. P. 32(a)(7)(B)(i) and (iii).

☒     I relied on my word processor to obtain the count and it is: WordPerfect 12.0

☐     I counted five characters per word, counting all characters including citations and numerals.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

s/Bill Zuhdi _____
Bill Zuhdi

## CERTIFICATE OF MAILING AND ELECTRONIC SERVICE

This is to certify that on March 22, 2010, and pursuant compliance with the Rules of the 10th Circuit U.S. Court of Appeals, copies are provided to:

Jared A. Looper
Attorney General's Office
FHC.Docket@oag.state.ok.us

Mr. Howard Morris, #538096
P.O. Box 97
McAlester, OK 74502

s/Bill Zuhdi _____
Bill Zuhdi

## <u>CERTIFICATE OF DIGITAL SUBMISSIONS</u>

I certify that all required privacy redactions have been made, and with the exception of those redactions, very document submitted in digital form or scanned PDF format is an exact copy of the written document filed with the Clerk.

I also certify that the digital submissions have been scanned for viruses with the most recent version of a commercial virus-scanning program, Norton Virus Scan, updated 3/2010, and according to the program, are free of viruses.

s/Bill Zuhdi
Bill Zuhdi